IN an action on the case by the defendant against the plaintiff for slandering the title of the former t > certain slaves by him exposed to public sale, upon trial of the general issue, the jury found a verdict for him, assessing his damages to 500 pounds.
The plaintiff brought a hill, to be relieved against the verdict, praying an injunction, which was granted until further order, and afterwards, when the answer was filed, dissolved upon a motion.
At the hearing, in May, 1788, the court ordered another trial of the issue ; the plaintiff paying all the costs at law. and entering into bond, with surety, in the penalty of five hundred pounds, on condition to be void, if he should perform the future order of the court, at the same time the court gave leave *70 to the defendent to amend his declaration as to the number of slaves the title of which was supposed to have been slandered.
On the second trial, which was before the district court hidden at King and queen courthouse, the evidence was to this purpose : Edward Graves deposed that Ross treated whh Pynes, at his own house, for the purchase of his slaves, they agreed upon the price, but the one offering to pay it by bills of exchange, and the other declaring that he must have money, which alone his creditors, for payment of whose demands he was obliged to sell his slaves, would accept, they parted, and Ross said he would meet Pynes at the place and time appointed for the sale, with the money, the witness understood it to be a bargain.
Benjamin Temple deposed, that he was empowered by Ross to purchase the slaves of Pynes, taken in execution, which Ross said he had been attempting to purchase, adding that he had heard there was some defect in the title, but the witness might disregard it, and notwithstanding purchase at the stipulated prices. The witness, in his way to the place of sale, saw a letter, shewn to him by John Davis, from Ross, which related to his agency in the purchase of slaves generally, and signified a desire that the same should he continued, the sale was begun, and some of the slaves were sold to one Markham, soon afterwards a report, that the title of the slaves was not good’, produced altercation between Markham and Pynes, the former refusing to take the slaves bought by him, without bond and security, which the other was not able to give, for warranting the title. The sale by auction, before a second lot was bought, ceased, and the bystanders dispersed. John Davis, to whom the report was traced, being required to shew his authority for it, produced the letter, dated the T day of december, 1T67, the words of which are herein after inserted, and which was publicly read, the slaves were sold next day privately for much less money than would have been produced by the sale of them publicly, as the witness, forming his calculation by the sale to Markham, believed, (a)
The part of the letter, mentioned by Benjamin Temple, which relates to the subject is in these words :
‘ I expect mr. Temple, the sheriff of King and queen, will be ‘over with 11. negroes belonging to Benjamin Pynes of that *71 ‘county, he proposed to sell them at the Ridge on tuesday. i ‘ saw them when down the country, and offered him 330 pounds ‘ for the whole, there were four fellows, two wenches, and five ‘ boys and girls, i nave wrote a line to Temple, that i will still ‘ give Pynes the same, if he comes over you may try to bar- ‘ gain with him, and give him an order on me at Williamsburg ‘for the money, i imagine Pynes will send the same negroes ‘ that i saw, viz. Tom, and his wife and daughter ; Adam, his ‘ wife, and fonr children, and two other fellows, Sauny and ‘ however one of them has a sore on his chin, and the other is ‘ a little old and a cooper, if you think the negroes look well, ‘ you need not stand on five or ten pounds more : there have ‘ been some disputes raised about the title, they say Mann Page £ sets up a clame to them, hut i believe there is but little danger, ‘be up as soon as possible, am in haste, sir, your’s David Ross. ‘7 of december, 1767. to Mr John Davis at Henrico court.’
To this evidence the plaintiff demurred, the defendent joined in demurrer, and the jury being directed by the court, if they should find any damages, to find them conditionally, assessed the damages of the defendent, if the law arising on the demurrer to evidence be for him, to one thousand pounds.
The district court did not give judgement on the demurrer, but certified it, with the verdict, to this court, and also certified it, as the opinion of the judges of the said district court, that the weight of testimony on trial of the issue was on the part of iloss, and therefore that the verdict was not satisfactory to that court, by the latter part of which certificate the judges are supposed to have meaned that the evidence was not sufficient to support the issue on the part of Pynes.
The cause coming on, the 12 day of October, 1789, to be again heard on the bill, answer, exhibits, examinations of witnesses, and transcript of procedings before the district court, among which examinations is that of John Davis, not stated in the demurrer, explauing the manner in which the letter to him from the plaintiff came to be made public, and stating several circumstances, in order to exculpate the author of that letter, the court delivered this
OPINION,
That the loss to the defendent in the sale of his slaves must be attributed to the plaintiff, his letter addressed to John Davis being the only apparent origin of the report which occasioned *72 that loss ; and that the plaintiff, although he is believed not to have designed any injury, ought to make reparation ; (b)
And the measure of that reparation observed in the first verdict having been more than approved * by the second ;
The court therefore dismissed the bill with costs :
And this decree of dismission, from which the plaintiff appealed, was affirmed the 8 day of december, 1790.

 The residue of the testimony of this witness, and the whole testimony of some others, and also the certificate of a sale by Pynes of his land tending to prove the quantum of the damages sustained by Pynes, being unimportant, as to the principal question now only considerable, namely, whether Ross ought fo make reparation for the damages, are omitted.

 No proof that any other man ever pretended to clame a title to the slaves exposed to sale by the defendent appeared, hence the report that such a clame existed was supposed by the defendent’s counsil to be a figment of the plaintiff, in which case his obligation to compensate the other party’s loss is unquestionable. if the report were true, but the pretended title groundless, the plaintiff, by circulating the report, was no less culpable than if he had been the author of it. the letter committed to Davis a matter of information or pretended information, concerning the title of slaves, confessed by the writer to he unimportant to himself, for he impowered his agent to purchase the slaves, disregarding any report of defect in the title ; — unimportant to himself, if his motives were not to depretiate the slaves, which would have been worse, his onljt motive then, if not that, must have been to warn his agent not to decline bidding, alarmed by the report, if he should hear it. so faT the plaintiff was justifiable, his fault was in not guarding against the consequences of the report published 'by his agent, and by him only, this want of caution rendered him justly obnoxious to compensation, with the rule of the roman law, culpam autem esse, quod, cum a diligente provideri poterit, non esset provisum. Dig. lib. IX. tit. II, 1. XXXI, the common law is believed to concur.

 [i. e. The damages by the second verdict were greater than by the first.— The chancellor set it, for £500, aside. See 3 Call 573, which says : “ The increase of damages in the second verdict might be produced by sudden passion, ,.which, in this case, it was proper for the chancellor to moderate, and to take that sum which two juries had affirmed.” — Ed.]